**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:16-cr-00202-DAP |
| vs. | ) | |
| | ) | |
| XIN FAN, aka XIN FRANCO FAN, | ) | |
| aka FRANCO FAN, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**SENTENCING MEMORANDUM ON BEHALF OF**</u>
<u>**DEFENDANT XIN FAN**</u>

COMES NOW Defendant Xin Fan (also known as Xin Franco Fan or Franco Fan), by and through undersigned counsel, and for his sentencing memorandum, states as follows:

**I.      Preliminary Statement**

Xin Fan ("Xin") is a good man: a caring son to his parents, a loving husband to his wife, and an adoring father to his eight-year-old daughter, all of whom are currently living without him in Shanghai, China. Xin effectively began serving a prison sentence on February 19, 2016, the day he was unexpectedly arrested during a business trip to Ohio. Xin had planned to stay in the United States for only a few days, but has now been here for more than seven months, worlds apart from his family and friends. While he has admittedly violated U.S. law, Xin has taken full responsibility for his actions, cooperated in the case, and has paid full restitution to the victim of his crime, Goodyear. Given the record of this case, the nature and circumstances of the offense, and the historical characteristics of the defendant, the Court has a basis to sentence Xin consistent with the plea agreement, which is sufficient but not greater than necessary to address

all goals of sentencing. For the reasons stated herein, Xin respectfully requests a sentence of no more than 24 months.

## II.    Background

In early February 2016, Xin was working for Goodyear Shanghai Management Company and Goodyear Orient Company (Private) Limited ("GOCPL"), wholly-owned subsidiaries of Goodyear. Xin and his wife were living with their daughter in an apartment in Singapore. In mid-February, Goodyear summoned Xin to Ohio, ostensibly to attend routine business meetings. On February 19, 2016, Xin was removed from group meetings and interviewed by Goodyear's security team and in-house counsel. Xin cooperated fully during the interview, providing Goodyear (and the government) with much of the information that was used to bring formal charges against him and his co-defendant, Rex Yu. Both men were arrested by federal law enforcement officials the same day, and have been effectively detained ever since.

Since his arrest, Xin has had extremely limited contact with his family and friends in China. Xin spent more than five months living with Mr. Yu in a small apartment just outside of Youngstown, Ohio, virtually cut off from the rest of the world. Despite these hardships, Xin demonstrated exemplary behavior during his time of pretrial supervision, complying with all terms. To expedite his ultimate return to China, on August 3, 2016, Xin voluntarily surrendered to custody so he could begin serving whatever sentence the Court deems appropriate.

Since his arrest, Xin has spent much of his time reading and contemplating ways in which he can better himself. Xin has come to realize that life is about more than just money, and after months of self-reflection, he realizes the most important thing in his life is his family, from which he is now estranged. At age 40, Xin is a relatively young man. He hopes to spend the rest

of his life in China loving and supporting his family and contributing to society. He aspires to one day open his own business, perhaps a barbershop or ice cream shop.

Since his arrest, Xin's wife and eight-year-old daughter were forced to move in with Xin's parents in Shanghai. The difficulties in traveling across the globe in order to visit Xin will almost certainly be too great for them to bear. As such, during any term of imprisonment, it is extremely unlikely Xin will have any visits from his family. Xin's only other potential support network here in the United States would have been his colleagues at Goodyear; however, those relationships have been severed due to this case. That leaves Xin completely alone during any term of imprisonment, with the only exception being his co-defendant, Mr. Yu.[1]

As far as his immigration status, Xin's temporary Visa has expired, and he will face certain deportation after his incarceration. Xin has fully cooperated in the deportation process, and simply wants to return to his family as soon as possible. He has no intention of returning to the United States and would agree to deportation immediately, and would certainly prefer that as an alternative to an extended prison sentence.

## III.  Principles of Sentencing

Title 18, United States Code, § 3553(a)(1) directs sentencing courts to consider among other things the "nature and circumstances of the offense and the history and characteristics of the defendant." Section 3553(a) also requires the courts "to impose a sentence sufficient but not greater than necessary to comply with the purposes" of United States sentencing: (1) retribution, (2) general deterrence, (3) specific deterrence, and (4) rehabilitation. 18 U.S.C. § 3553(a)(2); *see United States v. Gupta*, 904 F.Supp.2d 349, 354-55 (S.D.N.Y. 2012); *United States v. Adelson*, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006). Courts are also directed by § 3553(a) to take into

---

[1] Defendant is asking for a non-binding recommendation from the Court to the Federal Bureau of Prisons that he be housed together with his co-defendant, Mr. Yu, at FCI Elkton.

account the types of sentences available, the United States Sentencing Guidelines ("the Guidelines"), and pertinent policy statements. 18 U.S.C. § 3553(a)(3)-(5). Congress also specifically highlighted the goal of avoiding unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Finally, the statute charges courts with considering the importance of restitution in the United States criminal system. 18 U.S.C. § 3553(a)(7).

In *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court held that the Guidelines are effectively advisory rather than mandatory. Accordingly, a*ny type of sentence the Court deems just is available*. The Supreme Court has recommended that a specific multi-step process be followed in imposing sentence. First, "a court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Thereafter,

> [a]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the [court] should then consider all the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, *[the court] may not presume that the Guidelines range is reasonable*.

*Id*. at 49-50 (emphasis added). As such, federal courts enjoy broad discretion in fashioning sentences based on the unique attributes of the individuals who come before them. *Koon v. United States*, 518 U.S. 81, 113 (1996) ("the sentencing judge . . . [shall] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); P*epper v. United States*, -- U.S. --, 131 S.Ct. 1229, 1240 (2011) ("punishment should fit the offender and not merely the crime").

4

Here, when applying the §3553(a) factors, the Court should impose the minimum sentence under the Guidelines' range agreed to by the Xin and the United States, and sentence Xin to no more than 24 months in prison.

**IV.    The Nature and Circumstances of the Offense and History and Characteristics of the Defendant Support a Sentence of No More Than 24 Months.**

The nature and circumstances of the offense reveal a sentence of no more than 24 months would be sufficient but not greater than necessary to achieve the purposes of sentencing.

  *A.   Personal History*

Xin is only 40 years old. He and his only brother are the sons of retired educators who have been married for 42 years. Xin grew up poor in a rural area in China near the Pakistan border. Xin has been married to his wife for 13 years and they have one child, an eight-year-old girl named Chengyi. The attached letters of support provided by Xin's parents, his wife, and his friends evidence the remarkable kindness, love and support he has shown to his family and friends over the years (Exhibit 1).

Xin graduated from Xinjiana University in China with a Bachelor's Degree in Applied Chemistry (1997). He later obtained a Master's Degree in Applied Chemistry from the Wuxi University of Light Industry in China (2010). While working, Xin also earned a Master's of Business Administration (MBA) from the Booth Business School at the University of Chicago (2014). Xin's native language is Mandarin Chinese, but he can read and write in English.

From February of 2005 until his arrest on February 19, 2016, Xin was employed by Goodyear Shanghai Management Company and Goodyear Orient Company (Private) Limited ("GOCPL"), both wholly-owned subsidiaries of Goodyear. Prior to his termination, Xin held the position of Managing Director of GOCPL. Prior to working for GOCPL, Xin held various positions with the Owens Corning Company and BASF Company in Shanghai, China.

Xin has no criminal history. He does not drink alcohol or use drugs. While Xin has understandably experienced bouts of anxiety and depression as a result of his current personal and legal circumstances, he suffers from no mental health defects.

      B.        *Nature and Circumstances of the Offense*

Xin has admitted to wrongdoing in facilitating Goodyear's purchase of natural rubber from an entity called Toprubber, of which he maintained an ownership interest. In essence, Toprubber was able to procure natural rubber at below market prices from another natural rubber supplier, an entity called GMG. While Xin does not dispute Goodyear was harmed by his conduct, Xin does not believe Goodyear paid more than the market rate for natural rubber acquired from Toprubber. Effectively, Goodyear simply was not afforded the opportunity to purchase the natural rubber at the below-market rates Toprubber achieved. In addition to violating U.S. law, the arrangement certainly posed a conflict of interest, whereby Xin violated the terms of his employment with GOCPL, for which he was terminated. Since his arrest, Xin has fully accepted responsibility for his actions, and he has agreed to cooperate fully with the government. Xin has also made restitution to Goodyear in the amount of $1,200,000. Xin paid the restitution without disputing whether Goodyear suffered pecuniary harm as a result of Xin's conduct.

**V.    A Sentence within the Range Agreed to by Parties Would Be Sufficient but not Greater than Necessary to Achieve the Purposes of United States Sentencing.**

Section 3553(a)(2) enumerates the purposes of sentencing to be achieved by imposing "a sentence sufficient but not greater than necessary": (1) retribution, (2) general deterrence, (3) specific deterrence, and (4) rehabilitation.

Xin has received sufficient retribution for his crime. Xin was terminated from his job, he has been publically shamed by widely-disseminated reports of his arrest and prosecution, and he will never again work for another U.S. or other multinational company. Xin has lost an annual

salary and benefits exceeding more than $400,000, and his earning potential has been and will be severely hampered by an extended period of detention in the United States and his damaged reputation. He has also forfeited/made restitution in the amount of $1,200,000.

After serving his punishment, Xin will return home to China to be with his family. Because he is not an American citizen, Xin is not eligible for a half-way house or other alternative prison programs. He has no desire to remain in the United States any longer than required, nor will he challenge deportation. In fact, Xin is willing to agree to deportation immediately. While Xin's sole desire is to return home to be with his family, he also faces an uncertain future in China. It is unclear whether Xin will face any punishment there for his conduct. Upon his return, the Chinese government will likely restrict Xin from traveling overseas for three years, and it is possible China could prosecute him for the same conduct, placing him in double jeopardy. These consequences, regardless of whatever sentence the Court imposes, will certainly deter Xin from ever engaging this type of conduct again and should deter others from engaging in similar conduct. As far as rehabilitation, the letters of support from his family and friends (Exhibit 1) are a testament to Xin's otherwise good nature and character. Xin fully accepts his responsibility, as demonstrated in his attached personal statement addressed to the Court (Exhibit 1), and despite the culture of corruption that exists in China, refuses to blame others for his actions. He is committed to rehabilitating his reputation and dedicating his life to serving others.

**VI.    Conclusion**

Xin is aware his crime represents a significant failure on his part. However, as demonstrated throughout, Xin has accepted responsibility for his conduct and has engaged in extensive self-reflection regarding how he lost his way. Xin can only hope to restore his

reputation and make amends with his family for the hardships he has made them suffer. Xin's misconduct stands in contravention to his years spent trying to better himself and providing for his family. Over the years, Xin has been a devoted son, husband, and father. All indications are that Xin will be a loving son, husband, and father for the years to come once he is reunited with his family in China. A prison term of no more than 24 months would be sufficient but not greater than necessary to achieve all goals of federal sentencing. As a result, Xin respectfully requests that this Court impose such a sentence.

WHEREFORE Defendant Xin Fan respectfully requests this court to consider all of the matters presented herein and impose a sentence of no more than 24 months.

Date: October 6, 2016

Respectfully submitted,

HUSCH BLACKWELL LLP

s/ Matthew T. Schelp
Matthew T. Schelp, MO45724
Mark C. Milton, MO63101
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480-1500
Fax: (314) 480-1505
Matthew.Schelp@huschblackwell.com
Mark.Milton@huschblackwell.com

*Attorney for Defendant XIN FAN, aka XIN FRANCO FAN aka FRANCO FAN*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

s/ Matthew T. Schelp